IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ANTHONY ALLEN WOOD, MICHAEL
P. MEANS, COLLEEN MEANS, and
KEIHTON NUNN, as individual parties,
as private attorney generals, and as class
representatives                                                                                          PLAINTIFFS

VS.                                                  Case No. 05-1011

TERIS, LLC a/k/a Ensco, Inc.                                                                             DEFENDANT

## MEMORANDUM OPINION

On April 6, 2006, the Court ordered briefs regarding whether or not it had subject matter jurisdiction based on diversity of citizenship over this putative class action. (Doc. 53) The parties have filed their briefs. (Docs. 54 and 55) The Court issues this Memorandum Opinion and Order addressing the jurisdictional issues.

### I.  PROCEDURAL BACKGROUND

On February 4, 2005, Teris LLC a/k/a Ensco, Inc. (hereinafter "Teris") removed this suit from the Circuit Court of Union County, Arkansas. (Doc.1) The putative class representatives were Anthony Allen Wood, Michael P. Means, and Colleen Means. On April 25, 2005, Teris removed another putative class action, arising out of the same set of facts, from the Circuit Court of Union County. *See Nunn v. Teris, LLC*, 05-CV-1037, Western District of Arkansas, El Dorado Division. The sole putative class representative in *Nunn* was Keithton Nunn. On August 24, 2005, the Court consolidated these two suits. (Doc. 24) The class actions arise out of an explosion at Teris' plant in El Dorado, Arkansas. As a result of the explosion, the neighborhood around the plant was evacuated.

On November 30, 2005, the Court held a hearing on Motions to Certify Class Action (Docs. 4 and 26) and to Amend Complaint (Doc. 17). *See* Doc. 38. At the hearing, Defendants questioned whether the Court had jurisdiction over this putative class action. On December 7, 2005, Defendants filed a Motion to Dismiss arguing Plaintiffs had no causes of action under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601, et seq., the Federal Clean Air Act, 42 U.S.C. § 7401, et seq., and the Federal Toxic Substance Control Act (TSCA) 15 U.S.C. § 2601, et seq. Defendants argued Plaintiffs' federal causes of action were barred because Plaintiffs failed to provide certain notices as required by sections of the respective acts. Plaintiffs admitted the failures, and the Court dismissed Plaintiffs' federal causes of action without prejudice. (Doc. 49) However, Plaintiffs argued the Court still had jurisdiction over their state law causes of action, such as negligence and nuisance, based on diversity of citizenship. The Court then entered a briefing schedule to allow the parties to address whether this Court had subject matter jurisdiction over this putative class action based on diversity of citizenship.

## II. DISCUSSION

**A.    Jurisdiction under 28 U.S.C. § 1332(a)**

Plaintiffs seek compensatory damages for personal injuries, property damage, emotional distress, and expenses resulting from the evacuation after the explosion. They also seek punitive damages and equitable relief. About 1,056 people have alleged some type of damage from the explosion. The federal jurisdictional statute states, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs ... ."[1] 28 U.S.C. § 1332(a). Generally, individual class members' distinct claims for actual damages may not be aggregated to satisfy the amount-in-controversy requirement for diversity jurisdiction under § 1332. *Kessler v. National Enterprises, Inc.*, 347 F.3d 1076 (8thCir.2003). However, a federal court sitting in diversity may exercise supplemental jurisdiction over additional plaintiffs who fail to satisfy the minimum amount-in-controversy requirement, as long as at least one named plaintiff satisfies the amount-in-controversy requirement and additional plaintiffs' claims are part of the same case or controversy as those plaintiffs who allege a sufficient amount in controversy. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, ____ U.S. ____, 125 S.Ct. 2611 (2005). When a complaint alleges a sufficient amount-in-controversy to establish diversity jurisdiction, but the court questions whether the amount is legitimate, the party invoking federal jurisdiction must prove the requisite amount-in-controversy by a preponderance of the evidence. *State of Mo. ex rel. Pemiscot County, Mo. v. Western Sur. Co.*, 51 F.3d 170 (8thCir.1995). Therefore, if either Wood, Michael Means, Colleen Means, or Nunn satisfies their burden of proof that they can meet the requisite amount-in-controversy, the Court may exercise supplemental jurisdiction over other claims that do not satisfy the amount-in-controversy requirement.

1.  **Compensatory Damages**

In his deposition, Wood testified he suffered no damage to his real or personal property. Wood did not miss work because of the explosion, but testified his eyes "burned" for one day because of the explosion. (Doc. 55-6, Wood Deposition, pp. 22-4) Michael Means testified the only property damage he suffered was a film on his car that rain washed off. Michael Means had a

---

[1] There is no dispute that Plaintiffs and Teris are citizens of different states.

scratchy throat and itchy eyes for one to one and a half days for which he did not seek medical treatment. (Doc. 55-7, Michael Means Deposition, pp. 18-19) Colleen Means also testified that a film on her car was later washed off by rain. Colleen Means had an irritated throat, a raspy voice, eye irritation, and increased anxiety that lingered for three days to a week. She did not seek medical treatment. (Doc. 55-8, pp. 25-26)

Nunn owns a home in the evacuated area and lives there with his three children. (Doc. 55-2, Nunn Deposition, pp. 8-10) Nunn testified the explosion cracked a window in his house but does not know the cost of repairing the crack. (Doc. 55-3, Nunn Deposition, pp. 12-13) The explosion dirtied two of his cars and a friend's car parked at his house. Nunn paid $90 to have the three car detailed. (*Id*., pp. 14-18) Nunn owns a business and claims he lost income because he did not open the business for one day while he checked on his house. Nunn does not know how much income he lost as a result of his business being closed one day. Nunn also threw away $40 worth of food. (Doc. 55-4, Nunn Deposition, pp. 14-16) Nunn also suffered coughing and watery eyes but has not sought medical help. Nunn's children went to see Dr. Elizabeth Tolosa the day after the explosion because they had headaches and their throats hurt. The children's mother took them to the doctor. Nunn paid for the doctor's visit, but does not remember the amount. The children have not suffered any other medical problems because of the explosion. (*Id.*, pp. 1-4)

The Court cannot find that either Wood, Michael Means, Colleen Means, or Nunn's claims satisfy the minimum amount-in-controversy of $75,000. In fact, the evidence available to the Court at this point in the litigation, a year and a half after the explosion, shows their individual damage claims fall well short of $75,000. The explosion left a film on cars that washed away with rain. Nunn claims only minor damage to his home located in the evacuated area and offers no proof as the amount of his lost income. None of the class representatives sought medical help for

their physically irritating or mental anguish problems. The class representatives may have some nuisance damages for being evacuated from the area for a day, but the Court does not believe that amount of damages would satisfy the $75,000 amount-in-controversy requirement either. Plaintiffs make a passing reference to the diminished value of homes in the evacuated area, make present no evidence of the reduced value for the Court to consider.

### 2. Aggregation

Since no individual class representative or class member can independently satisfy the amount-in-controversy requirement, the Court must address whether Plaintiffs' claims for injunctive relief or punitive damages may be aggregated to meet the amount in controversy.

> When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.

*Zahn v. International Paper Co.*, 414 U.S. 291, 294, 94 S.Ct. 505, 508 (1973) *quoting Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40-41, 32 S.Ct. 9 (1911). The law on this point has developed to a point that the general rule is an individual class member's distinct claims may not be aggregated to satisfy the amount in controversy requirement for diversity jurisdiction. *See Kessler v. National Enterprises, Inc.*, 347 F.3d 1076 (8thCir.2003); *Crawford v. F. Hoffman-LaRoche Ltd.*, 267 F.3d 760 (8thCir.2001); *Burns v. Massachusetts Mut. Life Ins. Co.*, 820 F.3d 246 (8thCir.1987). The exception to the general rule allows claims to be aggregated to satisfy the amount in controversy requirement when class members sue jointly to enforce a common title or right to which they have common and undivided interest. *Kessler*, 347 F.3d at 1079; *see also Crawford*, 267 F.3d at 765; *Burns*, 820 F.3d at 250. An identifying characteristic of a common and

undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased. *Kessler*, 347 F.3d at 1079.

In this case, each of the class representatives' allegations for damages and injunctive relief stems from their own physical injuries, property damage caused by the explosion. If one of the class representatives or class members were to recover damages for personal injuries or property damage caused by the explosion, another class member's damages would not be reduced. With respect to injunctive relief, most, if not all, of the injunctive relief sought would not establish "shares" for the class members to divide. The requested injunctive relief would not create a shared fund for class members to divide among themselves. This situation is analogous to *Kessler* and *Burns*. In *Kessler*, 347 F.3d 1079-80, the Eighth Circuit Court of Appeals held the exception to the general aggregation rule did not apply to claims asserted by condominium owners in a class action suit seeking rescission of their time-share purchase agreements. Each owner sought to enforce rights obtained through individual contracts with the condominiums' developer and any recovery by one class member would have no effect on the amount recoverable by another member. In *Burns*, 820 F.3d at 250-1, the Eighth Circuit held the exception to the general aggregation rule did not apply to claims asserted by insureds who had not accepted their insurance company's offer to exchange their right to obtain loans at a low interest rate for the right to receive higher dividend payments. Each insureds' claim stemmed from the purchase of separate and distinct insurance policies. *Id.* The insureds sought to enjoin the insurance company from distributing dividends in the future under its dividend policy. *Id.* Other district courts within the Eighth Circuit have been slow to apply the exception to the general aggregation rule. *See e.g. Morinconi v. AT & T Wireless PCS, LLC*, 280 F.Supp.2d 867 (E.D.Ark.2003); *Webb v. American International Group, Inc.*, 277 F.Supp.2d 1014 (E.D.Ark.2003). The Court finds the class representatives' claims for injunctive

relief or punitive damages cannot be aggregated to satisfy the amount in controversy requirement for diversity jurisdiction.

### 3. Injunctive Relief

The class representatives' claims for injunctive relief can still satisfy the amount in controversy if, standing alone, the claim can be valued at $75,000 or more. Whether the injunctive relief is valued at $75,000 or more is a matter of perspective. The Court has no doubt the injunctive relief sought by the class representatives is worth a great deal less than $75,000 to them as individuals. If the class representatives obtain the injunctive relief sought Teris will be forced to implement certain safeguards to ensure no future explosions occur. It is somewhat doubtful this type of relief could be valued at all, with any credibility, from the perspective of the individual class representatives. On the other hand, the Court has no doubt the cost to Teris of complying fully with the injunctive relief would far exceed $75,000. The injunctive relief would possibly require Teris to implement new safety procedures and safeguards. Teris would have to reevaluate the safety of its El Dorado plant. Therefore, whether the amount in controversy requirement for diversity jurisdiction exists depends on whether the value of injunctive relief is measured from the class representative's perspective or Teris' perspective.

In an action seeking injunctive relief, the amount in controversy for jurisdictional purposes is measured by the value of the object of the litigation. *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 97 S.Ct. 2434 (1977). As in *Hunt,* sometimes identifying the "object of the litigation" is easy. However, in cases like these, identifying the "object of the litigation" depends on the effect of the relief sought on the adversarial parties.

For the purpose of determining whether the amount in controversy exists in diversity cases, the Eighth Circuit has decided to measure injunctive relief by the value to the plaintiff of the right

7

sought to be enforced. *See Burns*, 820 F.3d at 248. The Eighth Circuit recently reinforced this precedent. *See James Neff Kramper Family Farm Partnership v. IBP, Inc.*, 393 F.3d 828 (8thCir.2005). The Second, Third, and Eleventh Circuits also explicitly agree. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805 (11thCir.2003); *Packard v. Provident Nat. Bank*, 994 F.2d 1039 (3dCir.1993); *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.3d 82 (2ndCir.1991). The Seventh, Ninth, and Tenth Circuit allow courts to view the cost of compliance to the injunction by the defendant when determining whether the amount in controversy is met. *See Uhl v. Thoroughbred Technology and Telecommunications, Inc.*, 309 F.3d 978 (7thCir.2002); *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952 (9thCir.2001); *Oklahoma Retail Grocers Ass'n v. Wal-Mart Stores, Inc.*, 605 F.2d 11155 (11thCir.1979). Other circuits have not explicitly addressed the issue.

The Court feels bound to adhere to the Eighth Circuit precedent. Reading all of the Eighth Circuit opinions regarding aggregation of class members' claims to reach the requisite amount in controversy shows a common thread of strictly defending the idea that federal courts are courts of limited jurisdiction. The Court is hesitant to find itself in the position of the district court in *Kessler* and have an eventual resolution of this lawsuit thrown out on appeal because it lacked subject matter jurisdiction at the beginning of the suit. The Court finds the value of the class representative's injunctive relief is far below $75,000 and the requisite amount in controversy does not exists. Therefore, the Court finds it lacks subject matter jurisdiction over this suit under 28 U.S.C. § 1332(a).

    **4.**    **Punitive Damages**

As stated above, the Court does not believe the class representatives or individual class members' distinct claims for punitive damages may be aggregated to satisfy the amount-in-

controversy requirement for diversity jurisdiction. *See Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760 (8thCir.2001). The Court does not believe the class representatives' individual claims for punitive damages would rise to $75,000 because their compensatory damages claims would not support such a large punitive damages award. *See e.g. State Farm Mut. Auto. Ins. Co. v. Campell*, 538 U.S. 408, 123 S.Ct. 1513 (2003) (stating courts must ensure that the measure of punitive damages is reasonable and proportionate to the amount of harm to a plaintiff and to general damages recovered; in valuing punitive damage awards, single digit multipliers of general damages are likely to comport with due process while achieving deterrence and retribution).

**B.     Jurisdiction under 28 U.S.C. § 1332(d)**

Last year, Congress enacted the Class Action Fairness Act of 2005 ("CAFA"). CAFA enlarged diversity of federal court jurisdiction over class actions. *See* 28 U.S.C. § 1332(d). However, section 9 of CAFA makes clear that CAFA only applies to civil actions commenced after February 18, 2005. *See* Pub. L. No. 109-2, 119 Stat. 4, 14. Here, Wood, Michael Means and Colleen Means filed their suit prior to February 18, 2005, and Nunn filed his suit after February 18, 2005. Thereafter, the Court consolidated the two civil actions. Since the Court consolidated a pre-CAFA civil action with a post-CAFA civil action, it feels compelled to address whether it has jurisdiction over this suit under CAFA. Therefore, the Court will assume *arguendo* the this action was commenced after February 18, 2005.

The applicable portion of the statute states, "The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action[.]" Plaintiffs argue that this class action exceeds the sum or value of $5,000,000. The Court cannot agree. There is evidence before the Court that the size of the class would be about 1,000 people. Thus, each class member would

need claims totaling approximately $5,000 for the Court to find it had jurisdiction of the class under § 1332(d). The Court does not believe Wood, Michael Means, Colleen Means or Nunn have showed that their claims amount to $5,000. Their personal injuries are temporary and can be characterized as irritating and inconvenient. They have not presented any evidence as to the value of their claim for real property damage. Nor have they shown that their automobiles are worth less because of the explosion. Nunn's expense relating to three cars parked at his house was only for cleaning the cars and under $100. The Court cannot find the matter in controversy here exceeds $5,000,000. Therefore, the Court finds it never had jurisdiction over this suit under any part of 28 U.S.C. § 1332.

### III. CONCLUSION

For reasons discussed herein and above, the Court finds it lacks jurisdiction of this civil action under 28 U.S.C. § 1332(a), (d) and that this case should be remanded to the Circuit Court of Union County, Arkansas. An order of even date shall issue.

IT IS SO ORDERED, this 26th day of July, 2006.

/s/ Harry F. Barnes
Hon. Harry F. Barnes
U.S. District Court